MASSACHUSETTS BONDING & INS. CO. v. KEMPER.

In re L. P. HAZEN CO.

(Circuit Court of Appeals, Sixth Circuit. March 2, 1915.)

No. 2525.

1. BANKRUPTCY ⬅465—APPEAL—DISMISSAL—EFFECT.

Where, in a bankruptcy proceeding, an order was made disallowing a creditor's claim of a lien on the proceeds of certain property, and disallowing its general claim for the balance of the alleged indebtedness, the denial of the lien and the disallowance of the general claim were so distinct that there could have been an independent appeal from either part of the order, and the dismissal of the appeal from the disallowance of the general claim, because not taken within 10 days, as required by Bankr. Act July 1, 1898, c. 541, § 25a, 30 Stat. 553 (Comp. St. 1913, § 9609), in the case of appeals from judgments allowing or rejecting debts or claims, did not require the dismissal of the appeal from the disallowance of the claim of lien.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 927; Dec. Dig. ⬅465.]

2. BANKRUPTCY ⬅461—APPEAL—TIME FOR TAKING APPEAL.

In a bankruptcy proceeding against a building contractor, its surety filed a petition, alleging a lien upon and possession of certain machinery, and praying that its right thereto for the purpose of completing a contract might be adjudged, and the trustee enjoined from selling the machinery until the completion of the contract. The property was thereupon exempted from the general sale, but was later sold under an agreement that the proceeds should be held as a separate fund, subject to the determination of the controversy between the surety and the trustee, and a stipulation was filed, showing that the surety claimed a lien upon the net proceeds of such articles and claimed as a general creditor for the balance of its account. Held, that, while the assertion of a lien eventually took very much the form of an attempt to secure the allowance of a preferred claim, a controversy was presented over the title to or rights in specific property, and an appeal from an order disallowing the claim of

lien should be treated as taken under Bankr. Act, § 24a (Comp. St. 1913, § 9608), giving the Circuit Courts of Appeals appellate jurisdiction of controversies arising in bankruptcy proceedings in courts from which they have appellate jurisdiction in other cases, and hence the appeal was not required to be taken in 10 days under section 25a, relative to appeals from judgments allowing or rejecting debts or claims.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 920–923; Dec. Dig. ⊚—461.]

3. CHATTEL MORTGAGES ⊚—196—FILING OR RECORDING—INSTRUMENTS REQUIRED TO BE RECORDED.

A contract between a building contractor and its surety, whereby the contractor assigned and conveyed to the surety for its protection all of the contractor's tools, plant, equipment, and material, was in effect a "chattel mortgage," and invalid as to creditors, where possession was not taken by the surety, and the contract was not filed under Gen. Code Ohio, § 8560, providing that chattel mortgages, not accompanied by an immediate delivery, but followed by an actual and continued change of possession, shall be void as against creditors, subsequent purchasers, and mortgagees in good faith, unless it or a copy shall be filed as directed in the following section.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 429, 438–441; Dec. Dig. ⊚—196.

For other definitions, see Words and Phrases, First and Second Series, Chattel Mortgages.]

4. BANKRUPTCY ⊚—184—LIENS—RIGHTS OF TRUSTEES.

Where an instrument amounting to a chattel mortgage was invalid as against creditors, because not filed as required by Gen. Code Ohio, § 8561, it was invalid as against a trustee in bankruptcy, under Bankr. Act, § 47a (2), as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (Comp. St. 1913, § 9631), providing that trustees in bankruptcy, as to all property in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor, holding a lien by legal or equitable proceedings thereon.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. ⊚—184.]

5. BANKRUPTCY ⊚—172—LIENS—RIGHTS OF TRUSTEES.

Notwithstanding Bankr. Act § 70a (Comp. St. 1913, § 9654), providing that the trustee shall be vested with the title of the bankrupt, "as of the date he was adjudged a bankrupt," to all of the bankrupt's property, etc., under section 47a (2), as amended by Act June 25, 1910, the trustee acquires the rights of a lien-holding creditor as of the date of the petition; and where an instrument amounting to a chattel mortgage had not been filed, and possession had not been taken, at the date of the petition, the subsequent taking of possession prior to the adjudication did not give the mortgagee a lien superior to the rights of the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 220; Dec. Dig. ⊚—172.]

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

In the matter of the L. P. Hazen Company, bankrupt, in which Frank H. Kemper is trustee. From an order disallowing claims of the Massachusetts Bonding & Insurance Company, it appeals. Appeal from so much of the order as disallows a general claim dismissed; and the order, so far as it disallows a claim of lien, affirmed.

The bankrupt corporation, the Hazen Company, in July, 1910, agreed to erect a building in Cincinnati, and the Bonding Company became surety for the Hazen Company upon the usual contractor's bond, conditioned that the

---

building should be completed free from liens, etc., according to contract. In connection with obtaining the bond, the Hazen Company, called therein the applicant, entered into an agreement with the Bonding Company, including the provisions set out in the margin,[1] to the effect that the Hazen Company's building plans and machinery and the building contract itself were assigned to the Bonding Company by way of indemnity against signing the bond, and so that, in case of default, the Bonding Company might have the use of the plant to complete the building, in order to minimize its own liability. This contract was not recorded. While the erection of the building was in progress, and on September 20th the state court appointed a receiver for the Hazen Company. The receiver decided not to go on with this contract, and thereupon, on October 25th, the Bonding Company, acting under the power conferred or by virtue of the assignment made by the application contract, took possession of the building plant and thereafter carried on the contract to completion, resulting in a loss to the Bonding Company, and creating a corresponding claim in favor of that company against the Hazen Company.

Intermediate the appointment of the receiver by the state court and the taking of possession of the property by the Bonding Company, these bankruptcy proceedings were initiated by the filing of an involuntary petition on September 30th, as the result of which an adjudication occurred November 28th. Later, and in February, 1911, the Bonding Company filed a petition in the bankruptcy court, alleging its lien upon and possession of the building machinery, and praying that its right thereto for the purpose of completing the contract might be adjudged, that the trustee be enjoined from selling this machinery until the contract was completed, and that whatever loss the Bonding Company in the end suffered might be adjudged a secured claim against the proceeds of this property when sold. By an interlocutory order, this property was exempted from the general sale which the trustee was to make, and the determination of the rights of the parties was reserved. Later the property was sold under an agreement that the proceeds were to be held by the trustee as a separate fund and subject to the order of the court to be made in the controversy between the Bonding Company and the trustee. On November 5, 1912, a stipulation of fact was filed, showing that the total loss of the Bonding Company, by carrying out the contract, was $4,579.61, that the net proceeds of the property in controversy were $1,452.17, and concluding: "The Massachusetts Bonding & Insurance Company claims a lien upon the

---

[1] And for the protection of the said company the applicant hereby assigns, transfers, sets over, and conveys to the said company all its right, title, and interest in and to all of the tools, plant, equipment, material of every nature and description, which it now has or may hereafter have located upon or near or appertaining to the work contemplated under the contract for which the company has or is about to become surety, meaning and intending hereby to assign, transfer, set over, and convey to the said company all the tools, plant, and materials of every nature and description now being used, or about to be used, or which may in the future be used, by the applicant in connection with the work contemplated, whether the same are now located in or about the site thereof, or elsewhere, and including hereunder all materials purchased for, or to be purchased for, or chargeable to, said contract, or which may now be in process of construction in connection with said contract, or in storage at or in transit to said site, or elsewhere. The applicant hereby further assigns, transfers, sets over, and conveys to the said company all of its rights in and to subcontracts which have been or may hereafter be entered into by the applicant, together with all materials and stock manufactured or unmanufactured embraced therein; and the applicant hereby further authorizes, empowers, and appoints said company its true and lawful agent or attorney, with full power and authority at any and all times in its name and behalf to enter upon and take possession of any or all the tools, plant, equipment, materials, finished or unfinished, mentioned and referred to in this paragraph, and to use and enjoy the same, and also to enforce, use, and enjoy any or all subcontracts or other rights mentioned in this paragraph, and to do any other act or thing which may at any time be deemed necessary by said company to make effective the terms of this paragraph, with full power to said company to appoint a substitute attorney, or attorneys, to act hereunder."

220 F.—54

net proceeds of the articles above referred to, viz., $1,452.17, and to the allowance of its loss as a general creditor for the difference, viz., $4,579.61 less $1,452.17 equals $3,127.44." The referee, and on review the District Judge, held that the Bonding Company had no lien upon the tools and building machinery, valid as against the trustee, and so was not entitled to the specific fund in controversy, and also held that the general claim for $4,579.61, not having been filed in due form and in due time, must be disallowed. From the order of the District Court, entered on February 19, 1913, the Bonding Company appealed on April 26th, complaining both of the denial of the lien and the refusal of the general claim.

C. D. Robertson, of Cincinnati, Ohio, for appellant.

Province Pogue and B. B. Tuttle, both of Cincinnati, Ohio, for appellee.

Before KNAPPEN and DENISON, Circuit Judges, and SATER, District Judge.

DENISON, Circuit Judge (after stating the facts as above). [1, 2] 1. A motion is made to dismiss the appeal because it was not taken within 10 days, as required by section 25a. So far as the appeal seeks a reversal of the order disallowing the general claim, this motion must be granted, upon the authority of the cases cited by us in Re Martin, 201 Fed. 31, 34, 119 C. C. A. 363; but this does not dispose of the whole appeal. The denial of the lien and the disallowance of the general claim are so distinct that there could have been an independent appeal from either part of the order; and the appeal from so much of the order as refused the lien must be treated separately. While this assertion of lien eventually took very much the form of an attempt to secure the allowance of a preferred claim, and so appealable only under the 10-day limitation, yet we think that, considering the form in which it arose, it may fairly be regarded as presenting a controversy over the title to or rights in specific property, and that therefore this appeal is, pro tanto, entitled to be considered as taken under section 24a. To that extent, the motion to dismiss is denied. Southern Co. v. Elliotte (C. C. A. 6, Nov. 13, 1914) 218 Fed. 567, 134 C. C. A. 295. By granting the motion as to the general claim, we intimate no opinion whether that claim had been so filed that there was anything for the order appealed from to operate upon in that respect as an adjudication.

[3, 4] 2. In Title Guaranty Co. v. Witmire, 195 Fed. 41, 43, 115 C. C. A. 43, we held that an instrument substantially like the present application contract was, in real effect, a chattel mortgage, and was governed by chattel mortgage recording statutes. It results that under the Ohio statute [2] the purported assignment of title to or creation of the lien on this machinery was invalid as against creditors; and, under the amendment of June 25, 1910, to section 47a (2), as interpreted by us in the opinion this day filed in Potter Mfg. Co. v. Arthur, 220 Fed.

---

[2] Sec. 8560, Gen. Code: "A mortgage, or conveyance intended to operate as a mortgage, of goods and chattels, which is not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, subsequent purchasers, and mortgagees in good faith, unless the mortgage, or a true copy thereof, be forthwith deposited as directed in the next succeeding section."

843, 136 C. C. A. 589, it was invalid as against a trustee in bankruptcy. This statute does not suggest whether it intends to speak only of subsequent creditors.

[5] 3. As above recited, after filing the petition in bankruptcy but before the adjudication, the Bonding Company took possession of the property, and, as possession is by statute, a substitute for recording, we have the question whether the amendment of 1910 vests the trustee with the rights of a lien-holding creditor as of the date of the bankruptcy petition or as of the date of the adjudication. Since section 70a in general terms provides that the trustee is vested with the bankrupt's title as of the date of adjudication, it has been natural to assume that the rights of the trustee do not for any purpose reach back to the date of filing the petition; and there are decisions to that effect, or leaving the question open. In re Rose (D. C.) 206 Fed. 991, 993; Big Four Co. v. Wright (C. C. A. 8) 207 Fed. 535, 537, 125 C. C. A. 577, 47 L. R. A. (N. S.) 1223; In re Jacobson (D. C.) 200 Fed. 812, 814.

We can see no escape from applying to this situation the principle of the decision in Acme Co. v. Beekman Co., 222 U. S. 300, 32 Sup. Ct. 96, 56 L. Ed. 208, where it was held that, in spite of the language of section 70a, the trustee's rights extended, by relation, back to the commencement of the proceedings sufficiently to defeat the lien of an intervening attachment. The right of a general creditor to get a superior lien by levying an attachment and the right of the holder of an unrecorded mortgage to get a universally effective lien by recording the mortgage impress us as wholly analogous; and if the trustee's right goes back to the commencement of bankruptcy proceedings in the former case, it must in the latter. To the same general effect as the Acme Case is Everett v. Judson, 228 U. S. 474, 33 Sup. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154, which holds that interest of the trustee in a life insurance policy maturing intermediate petition and adjudication, is to be fixed as of the earlier date.

We have applied the same principle to the right of the bankrupt debtor to discharge his debt by payment to the bankrupt after petition filed. Toof v. Bank, 206 Fed. 250, 124 C. C. A. 118. The controlling principle must be that, for the purpose of fixing priority as between the trustee and adversely claiming lienholders, the time of filing the petition is the vital date, and that a lien which, on that date, was invalid as against creditors levying execution, cannot be perfected so as to make it valid against the trustee by action of the lienholder before adjudication. Indeed, to hold the contrary would be to say that, so far as this section is concerned, the mortgagee could with safety withhold his mortgage from the record, relying upon the mortgagor not to file a voluntary petition and to delay an adjudication upon an involuntary petition long enough to give the mortgagee an opportunity to file his mortgage.

This conclusion makes it unnecessary to consider whether the ultimate effect of taking possession and enforcing the security could be thought to create a preference as of that date, and so make the security invalid under the sections which relate to preferences and recording.

For the reasons stated, so far as the appeal relates to the general claim, it is dismissed, and so far as it relates to the lien claimed, the order below is affirmed. Appellee will recover costs.

